UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY LARICCIA, *et al.,* | ) | CASE NO. 1:21 CV 1291 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CLEVELAND CLINIC | ) | AND ORDER |
| FOUNDATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiffs Mary LaRiccia and her husband Travis Horn filed this action against the Cleveland Clinic Foundation, Emad Estemalik, Andre Machado, Hubert Fernandez, Raj Sindwani, Alicia Richardson, and John Does 1-111.  In the Complaint, LaRiccia alleges the Defendants transferred her care from Dr. Neil Cherian to another physician due to repeated personal, non-medical communications between LaRiccia and Cherian through the online MyChart program.  She asserts Defendants' actions violated Title III of the Americans with Disabilities Act ("ADA"), Title V of the ADA, section 504 of the Rehabilitation Act, section 1557 of the Affordable Care Act, and Ohio Revised Code §§ 4112.02 and 3798.04.  She also asserts state law claims for tortious interference with contract and breach of contract.  Horn asserts claims for loss of consortium.  They seek an Order from the Court requiring the Defendants to reinstate Cherian as LaRiccia's physician, to restore LaRiccia's MyChart privileges, and to pay LaRiccia and Horn monetary damages.

Defendants filed a Motion to Dismiss pursuant to Federal Civil Procedure Rule 12(b)(6) (Doc. No. 13). For the reasons set forth below, the Motion is granted and this action is dismissed.

## I.     Background

LaRiccia alleges she suffers from a neurological disorder called Mal de Debarquement Syndrome. She contends that this condition, marked by dizziness, balance and visual disturbances, is difficult to diagnose and is often missed by physicians. She first sought treatment from Dr. Neil Cherian in April 2020. She indicates he was the first to diagnose her condition. Throughout the course of Doctor-Patient relationship that spanned 6 months, LaRiccia and Cherian regularly engaged in very personal, non-medical conversations through the Cleveland Clinic's MyChart online application. These communications were a violation of the MyChart policies.

In October 2020, a nurse made Cherian's supervisor, Dr. Estemalik, aware of the communications between Cherian and LaRiccia via MyChart. Estemalik read the messages and deemed the content to be inappropriate. He notified LaRiccia that the Cleveland Clinic was transferring her medical care from Cherian to another physician due to the content and frequency of her MyChart conversations with Cherian. He also informed her that her MyChart messaging function was permanently disabled. Plaintiff, aware that Cherian was out of the office on vacation, called Cherian on his personal cellular telephone. Cherian indicated to her that he felt remorse for the situation but stated the decision was out of his hands.

Horn then called the Cleveland Clinic Ombudsman Office and left a voicemail message. The ombudsman returned his call and informed him that the decision had been made to transition LaRiccia's care to another physician. Horn asked to speak to a supervisor.

On November 12, 2020, Richardson, a member of the ombudsman staff, called Horn. They scheduled an appointment for LaRiccia with Cherian on November 17, 2020. Richardson suggested that this could be a step toward reestablishing the doctor-patient relationship between LaRiccia and Cherian. Nevertheless, on November 16, 2020, the day before the appointment, Richardson called Horn and indicated that department heads had cancelled her appointment with Cherian because care had been transferred to Cleveland Clinic Neurologist Dr. Julia Bucklan. LaRiccia claims Bucklan did not have as much experience as Cherian and was not an adequate substitute.

In December 2020, Plaintiffs filed suit in the Cuyahoga County Court of Common Pleas against the Cleveland Clinic asserting medical malpractice claims. They voluntarily dismissed those claims in March 2021. They also filed a discrimination claim with the Ohio Civil Rights Commission. That claim is still pending.

Plaintiffs assert four claims arising under federal law, and five claims arising under Ohio law. Under federal law, they assert violations of Title III of the ADA, Title V of the ADA, Section 504 of the Rehabilitation Act ("RA"), and Section 1557 of the Affordable Care Act. Under state law, they assert violations of Ohio Revised Code §§ 4112.02 and 3798.04, as well as claims for tortious interference with contract and breach of contract.

The Defendants filed a Motion to Dismiss (Doc. No. 13). They claim that the ADA, the RA, and the ACA do not provide a cause of action against individual Defendants. They further

contend that the ADA, the ACA, and the RA all require Plaintiffs to plead and prove that the Defendants' actions were motivated by her alleged disability. Plaintiffs, however, allege that the Defendants were motivated by the content the MyChart communications between LaRiccia and Cherian, not any disability that LaRiccia may or may not have. The Defendants further contend there are no allegations suggesting retaliation for conduct protected by the ADA. They assert that these reasons also support dismissal of the state law causes of action for failure to state a claim upon which relief may be granted.

## II.     Standard of Review

In deciding a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, the Court must determine the legal sufficiency of the Plaintiff's claims. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir.1993). *See also, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the legal standard for a Rule 12(b)(6) Motion to Dismiss); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (same).

When determining whether a Plaintiff has stated a claim upon which relief may be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations to be true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A Plaintiff is not required to prove, beyond a doubt, that the factual allegations in the Complaint entitle him or her to relief, but must demonstrate that the "[f]actual allegations [are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true." *Id*. at 555. The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

The Supreme Court in *Iqbal* clarified the plausibility standard outlined in *Twombly* by stating that "[a] claim has facial plausibility when the Plaintiff pleads content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Additionally, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant acted unlawfully." *Id*. Making this determination is "a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id*. For this analysis, a Court may look beyond the allegations contained in the Complaint to exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. FED.R.CIV.P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997).

Furthermore, federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990) and may not entertain an action over which jurisdiction is lacking. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Defects in subject matter jurisdiction cannot be waived by the parties and may be addressed by the Court on its own motion at any stage of the proceedings when there is an indication that jurisdiction is lacking. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 539-40 (6th Cir. 2006); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988).

### III.     Analysis

In this case, there is no viable basis for federal court subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468,

474 (6th Cir. 2008). Instead, they have only the authority to decide cases that the Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377(1994) (internal citation omitted).

Generally speaking, the Constitution and Congress have given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The first type of federal jurisdiction, diversity of citizenship, is applicable to cases of sufficient value between "citizens of different states." 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, the Plaintiff must establish that he is a citizen of one state and all of the Defendants are citizens of other states. The citizenship of a natural person equates to his domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir.1990). The second type of federal jurisdiction relies on the presence of a federal question. This type of jurisdiction arises where a "well-pleaded Complaint establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

Diversity of citizenship does not exist in this case. Both Plaintiffs list post office boxes in Ohio as their addresses. They do not provide the citizenship of the Defendants. They state only that the Defendants work at the Cleveland Clinic hospital in Cleveland Ohio. A Plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the Court's jurisdiction. Fed.R.Civ.P. 8. In a diversity action, the Plaintiff must state the citizenship of all

parties so that the existence of complete diversity can be confirmed. *Washington v. Sulzer Orthopedics, Inc.,* No. 03-3350, 2003 WL 22146143, at *1 (6th Cir. Sept. 16, 2003). Based on the limited information provided by the Plaintiffs, jurisdiction cannot be based on diversity of citizenship.

If federal jurisdiction exists in this case, it must be based on a claimed violation of federal law. In determining whether a claim arises under federal law, the Court looks only to the "well-pleaded allegations of the Complaint and ignores potential defenses" Defendant may raise. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). Although the well-pleaded-Complaint rule focuses on what Plaintiff alleges, it allows the Court to look past the words of the Complaint to determine whether the allegations ultimately involve a federal question. *Ohio ex rel. Skaggs*, 549 F.3d at 475. In addition to causes of action expressly created by federal law, federal-question jurisdiction also reaches ostensible state-law claims that: (1) necessarily depend on a substantial and disputed federal issue, (2) are completely preempted by federal law or (3) are truly federal-law claims in disguise. *See Mikulski*, 501 F.3d at 560; *City of Warren v. City of Detroit*, 495 F.3d 282, 286 (6th Cir. 2007).

Here, Plaintiffs are proceeding *pro se* and *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Indeed, this standard of liberal construction "requires active interpretation ... to construe a *pro se* petition 'to encompass any allegation stating federal relief.'" *Haines*, 404 U.S. at 520. Even with that liberal construction, however, Plaintiffs failed to properly identify a plausible federal question in this case.

Plaintiffs list claims under the ADA, the RA or the ACA. All of these statutes require as a central element of a cause of action that Plaintiffs plead facts suggesting the Defendants discriminated against LaRiccia on the basis of a disability. It is not enough to simply allege that LaRiccia has a medical condition. Plaintiffs have to allege facts that suggest that this medical condition meets the statutory definition of a disability, and that these Defendants made the decisions they made and took the courses of action that they took based solely on the fact that LaRiccia has Mal de Debarquement Syndrome. Plaintiffs' allegations establish none of those elements. To the contrary, they allege that the Defendants were motivated to transfer her care to another physician by the very personal and non-medical content of the messages LaRiccia exchanged with Cherian through MyChart. The decision to transfer her care would have been handled the same way if she had no illness and was exchanging personal, non-medical messages with any physician through MyChart. Plaintiffs do not allege any facts that suggest discrimination on the basis of a disability occurred here.

Furthermore, Plaintiffs' claims under Title V of the ADA require them to plead and prove that the Defendants took retaliatory actions against LaRiccia because she filed a charge with the Ohio Civil Rights Commission. 42 U.S.C. § 12203. Plaintiffs, however, do not allege any conduct that occurred after they filed a charge with the EEOC. They fail to allege facts to establish any of the elements of a cause of action under Title V.

In short, Plaintiffs' claims under the ADA, the ACA and the RA are all completely conclusory, and lack an arguable basis in law. They are not sufficient to invoke this Court's federal question jurisdiction. Plaintiffs' remaining claims arise, if at all, under state law. As

Plaintiffs did not establish diversity of citizenship jurisdiction, this matter cannot proceed solely on those state law claims.

## IV. Conclusion

Accordingly, Defendant's Motion to Dismiss (Doc. No. 13) is granted, and this action is dismissed for lack of subject matter jurisdiction. Plaintiff's Motion for Permission to File Electronically (Doc. No. 2), Motion for Temporary Restraining Order (Doc. No. 3), Motion for Appointment of Counsel (Doc. No. 4), Motion to Disqualify Defense Counsel (Doc. No. 14), Motion to Strike (Doc. No. 25) and Motion for Order Enjoining Defendants (Doc. No. 28) are denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

Date: October 15, 2021  /s/ John R. Adams
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE